IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BRUCE MEDLAR, JR. and KATHY    :    CIVIL ACTION
MEDLAR, H/W    :
   :
      v.    :
   :
THE REGENCE GROUP a/k/a REGENCE    :
BLUE CROSS BLUE SHIELD OF OREGON    :    NO. 04-2762

**MEMORANDUM AND ORDER**

JACOB P. HART
UNITED STATES MAGISTRATE JUDGE      May     23   , 2005

      This is a declaratory judgment action in which the Plaintiffs, Mr. and Mrs. Medlar, seek a

declaration that their health insurance policy is subject to the anti-subrogation terms of

Pennsylvania's Motor Vehicle Financial Responsibility Law, ("MVFRL").  The Defendant has

filed a Motion for Judgment on the Pleadings.  The court construes the Plaintiffs' response and

supplemental filings, as a similar motion.  After holding oral argument on the motions, and

allowing supplemental briefing, we now find for the Defendant and will enter judgment in

Regence's favor.

**FACTS**

      On August 18, 2003, Mr. Medlar was involved in a motor vehicle accident.  At the time

of his injury, Mr. Medlar was employed by TriQuint Semiconductors Optoelectronics,

("TriQuint").  As part of his benefits package with TriQuint, Mr. Medlar was offered a choice of

health coverage, including BlueCross BlueShield Oregon/Texas, Kaiser, Aetna, Tufts, and

Keystone (PA), an HMO based in Pennsylvania.  Mr. Medlar chose the Oregon option offered by

Regence.

      Following the accident, when Mr. Medlar had exhausted the first party benefits of his

automobile insurance, he sought coverage under the Regence Plan.[1]  Although Regence began

paying the medical bills, they soon forwarded a "Trust Agreement" to the Medlars.  By signing

the Trust Agreement, the Medlars would have agreed to repay Regence for any medical expenses

for which the Medlars received a recovery from a third party. When the Medlars refused to

execute the "Trust Agreement," Regence stopped paying the medical bills.  (N.T. 3/21/05, 5).

The Medlars filed an action for declaratory judgment in the Court of Common Pleas of

Northampton County, arguing that the Plan's treatment of third party recoveries and the language

of the Trust Agreement run afoul of the anti-subrogation provisions of Pennsylvania's MVFRL.

Regence removed the case to this court in June of 2004.  Presently before the court is Regence's

Motion for Judgment on the Pleadings, in which Regence argues that the Plan provision in

question is merely a coverage exclusion, not a subrogation provision.  Regence also claims that

the Plan is governed by Oregon law, which does not prohibit subrogation.  Finally, Regence

argues that the Medlars failed to comply with the administrative exhaustion procedures in the

Plan.[2]  In the Medlars' filings, they contend that the provisions in question amount to subrogation

and that Pennsylvania law governs this dispute and forbids such subrogation.

## LEGAL STANDARD

A motion for judgment on the pleadings may be brought by either party after the

pleadings are closed.  Fed.R.Civ.P. 12(c).  In considering such a motion, the court is required to

---

[1]When Mr. Medlar involuntarily separated from TriQuint, he continued his medical coverage via COBRA.  However, the COBRA benefits are through a Pennsylvania plan, not administered by Regence.  (N.T. 3/21/05, 9)

[2]Although the Plaintiffs have not sought judgment on the pleadings, we will construe their response to the Defendant's Motion, and their supplemental filing, to request the same relief.

view the facts and all inferences in the light most favorable to the non-moving party.  Institute for
Scientific Information, Inc. v. Gordon and Breach Science Publishers, Inc., 931 F.2d 1002, 1004
(3d Cir.) *cert. denied*, 502 U.S. 909 (1991).  Pursuant to Rule 12(c) of the Rules of Civil
Procedure, judgment will not be granted "unless the movant clearly establishes that no material
issue of fact remains to be resolved and that he is entitled to judgment as a matter of law."
Jablonski v. Pan American World Airways, Inc., 863 F.2d 289, 290 (3d Cir. 1988) (citing Society
Hill Civic Association v. Harris, 632 F.2d 1045, 1054 (3d Cir.1980)).

**DISCUSSION**

A.  Plan Language

Regence argues that the plan language upon which they rely to require the Trust
Agreement is not a subrogation clause.  Rather the provision is merely an exclusion of benefits
clause.  The court is not persuaded by this argument.  In fact, the court's opinion on this issue can
be summed up as follows.  If it looks like a duck, walks like a duck, and quacks like a duck . . .
it's a duck.

Subrogation is "[t]he principle under which an insurer that has paid a loss under an
insurance policy is entitled to all the rights and remedies belonging to the insured against a third
party with respect to any loss covered by the policy."  *Black's Law Dictionary*, 8th ed. at 1467.
Regence argues that because it has no obligation to pay any amount for which a third party is
responsible, their language does not amount to a subrogation clause.

The Regence Plan specifically states in the "General Exclusions" section:

The following services and supplies are not covered:

. . .

3

<u>Third Party Liability</u>
Services and supplies for treatment of illness or injury for which a third party is
responsible to the extent of any recovery received from or on behalf of the third party.

(Regence Plan, at 42).  In addition, the "Contract and Claims Administration" portion of the Plan

contains the following language:

**Third-Party Liability**
This provision applies when you or an enrolled dependent incurs health
care expenses in connection with an illness or injury for which one or more third
parties may be responsible.  In that situation, benefits for otherwise covered
expenses are excluded under this contract to the extent you or your enrolled
dependent receives a recovery from or on behalf of the responsible third party.

Here are some rules which apply in these third-party liability situations:

● If a claim for health care expense is filed with us and you have not yet
received recovery from the responsible person, we may advance benefits
for covered expenses if you or your enrolled dependent agrees to hold, or
directs your or your enrolled dependent's attorney or other representative
to hold, the recovery against the other party in trust for us up to the amount
of benefits we paid in connection with the illness or injury.  We will
require that you or your enrolled dependent sign and deliver to us an
agreement (called a trust agreement) guaranteeing our rights under this
provision before we advance any benefits.

(Regence Plan, at 48-49).

The Claims Administration language, quoted above, sounds suspiciously like a

subrogation clause.  The language of the Trust Agreement forwarded to Mr. Medlar for his

signature removes all doubt.  It states:

I hereby agree to pay Regence BlueCross BlueShield of Oregon an amount equal
to the total amounts paid and to be paid by Regence BlueCross BlueShield of
Oregon for benefits for such injuries out of any recovery either by way of
settlement or legal action from any costs and expenses (if any) incurred in
obtaining the recovery, and I further agree to hold any monies so recovered in
trust for Regence BlueCross BlueShield of Oregon.

(Trust Agreement - attached to the Complaint).  Both the courts of Oregon and the courts of

4

Pennsylvania recognize such language to amount to subrogation.  <u>Liberty Northwest Ins. Corp. v.</u>
<u>Kemp</u>, 192 Or.App. 181, 183-84 (2004); <u>Roberts v. Dixon-Brytczuk</u>, 65 Pa.D. & C.4th 510, 515
(Pa.Com.Pl. 2004)(language requiring reimbursement of proceeds paid by third-party is a "plain-language definition of subrogation").

Moreover, we find it more than coincidence that the correspondence requesting Mr. Medlar's signature on the Trust Agreement and the subsequent correspondence were sent by the Subrogation Department of Regence.

In short, we reject Regence's argument that the plan language does not amount to a subrogation clause.  The language of the policy and the Trust Agreement look, walk, and quack like a duck named "subrogation."

B.  Administrative Exhaustion

The Defendant also argues that the Plaintiffs failed to comply with the administrative exhaustion procedures called for in the Plan.  As the court explained at the hearing on the Motions, we are not impressed with the argument.  The policy provides for a three-step Appeal and Grievance Process.  First, the insured must file a grievance within 180 days of "the claim denial or other action giving rise to the grievance."  (Policy, at 61).  This may be done by writing a letter, filing a grievance, or contacting the Customer Service Department by phone.  Once the grievance is addressed, the insured has 180 days to file an appeal verbally or in writing.  Finally, the third level of appeal requires the insured to file verbally or in writing within 180 days of the decision in the first appeal.  (Policy at 62).

Here, the action giving rise to the grievance was the request for the signature on the Trust Agreement on February 13, 2004.  Plaintiffs' counsel contacted Regence, objecting to the Trust

5

Agreement.  On March 31, 2004, Regence contacted Plaintiffs' counsel, again requiring execution of the Trust Agreement.  In that correspondence, the Manager of Regence's Subrogation Department advised counsel that any lawsuit should be filed in the state of Oregon. Finally, on April 2, 2004, Plaintiffs' counsel again contacted Regence, objecting to the requirement of the Trust Agreement.

At oral argument, defense counsel argued that the Plaintiffs had directed their correspondence to the wrong unit of the company.  Rather than addressing their grievance and appeals to the "Appellate Unit," Plaintiffs sent their correspondence to the "Subrogation Unit." As I stated at the hearing, the court is underwhelmed with this argument.  The letter and Trust Agreement were sent by Kathy Miller of the Subrogation Department.  Plaintiffs' counsel responded to Ms. Miller and his correspondence was referred to C.J. Blackman, the Manager of the Subrogation Department.  It makes perfect sense for the Plaintiffs to have addressed their concerns about the Trust Agreement to the person who forwarded it to them.  We will not fault the Medlars for failing to direct their complaint to an "Appellate Unit" never mentioned in the Appeals and Grievance Process section of the Plan.

C.  Choice of Laws

Finally, the Defendant argues that language in the insurance contract, directing that Oregon law applies, controls this dispute and requires we apply Oregon law.  In the event the court rejects this argument, the Defendant asserts that Oregon law still applies to this case using a traditional conflict of laws analysis.  As such, it is entitled to judgment since Oregon law does not prohibit subrogation.  The Plaintiffs argue that the choice of law provision in the contract is not binding.  They further argue that the case presents a "false conflict," or, in the alternative, if

the court finds that a true conflict exists, then Pennsylvania law applies. Using Pennsylvania law, Plaintiffs win, they argue, because subrogation is prohibited in motor vehicle cases in Pennsylvania and ERISA does not pre-empt the anti-subrogation provision of Pennsylvania's MVFRL.

In resolving the dispute over which state's law applies, we must apply the forum's choice of law rules. Shuder v. McDonald's Corp., 859 F.2d 266, 269 (3d Cir. 1988). Applying Pennsylvania's choice of law rules, we must first determine if the parties, themselves have either explicitly or implicitly chosen which law to apply. Assicurazioni Generali, S.P.A., v. Clover, 195 F.3d 161, 164 93d Cir. 1999)(citing Smith v. Commonwealth Nat'l Bank, 384 Pa.Super. 65, 557 A.2d 775, 777 (1989)).

Here, the health insurance contract explicitly states that the interpretation and validity of the Plan is to be governed by the laws of the State of Oregon. (Plan, at 88). Although the Plaintiffs dispute the applicability of the choice of law provision of the contract, "Pennsylvania courts give effect to choice of law provisions of a contract." Miller v. Allstate Ins. Co., 763 A.2d 401, 403 (Pa.Super.Ct.2001). See also, Restatement (Second) of Conflict of Laws § 187(1)("[t]he law of the state chosen by the parties to govern their contractual rights will be applied, even if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue."). In fact, utilizing Pennsylvania's choice of law rules, the Third Circuit has upheld the choice of law provision contained in a group health insurance contract.

> We recognize that courts sometimes do not enforce choice of law clauses in adhesion contracts due to the differential in bargaining power between the parties. This reasoning, however, does not apply to group insurance contracts, at least in

the circumstances here.  When, as in this case, a business entity such as Intrenet obtains a group insurance contract that applies to individuals in various states, both the insurer and the organization have an arguable interest in establishing uniform procedures by specifying a particular state's law to apply to future disputes.  Further, a choice of law made by the insurer is less suspect in the group insurance context as the greater bargaining leverage possessed by the group agent should protect the insureds from unfavorable law.  Thus, there is no barrier to applying Indiana law to determine the scope of the arbitration clause in the policy.

Assicurazioni Genrali, at 165.  Thus, we conclude, at the first step of Pennsylvania's choice of law rules that Oregon law should control this dispute.

Moreover, even if we were to reject the Defendant's argument that the choice of law provision is controlling, we would still conclude that Oregon law applies to this dispute using a traditional choice of law analysis.  Based on Pennsylvania's choice of law rules, we must determine if a true conflict of laws exists.  Looking at the competing statutes, on their faces, it appears that a true conflict exists unless, of course, Pennsylvania's anti-subrogation provisions are preempted by ERISA.

Oregon law permits subrogation in circumstances such as those presented in this case.  When a health insurer provides benefits for a person injured in an automobile accident, and the injured person makes a claim or institutes legal action for his injuries, the injured person is required to give notice of such claim or action to the health insurer.  The health insurer may then seek reimbursement out of any recovery resulting from the claim or legal action.  O.R.S. § 742.536.

Pennsylvania law strictly prohibits subrogation in circumstances such as these.

In actions arising out of the maintenance or use of a motor vehicle, there shall be no right of subrogation or reimbursement from a claimant's tort recovery with respect to workers' compensation benefits, benefits under section 1711 (relating to required benefits), 1712 (relating to availability of benefits) or 1715

8

(relating to availability of adequate limits) or benefits paid or payable by a
program, group contract or other arrangement whether primary or excess under
section 1719 (relating to coordination of benefits).

75 Pa.C.S.A. § 1720.  Thus, if the anti-subrogation provisions of the MVFRL are not pre-empted

by ERISA, it is clear, under Pennsylvania law, that the Plaintiffs would be entitled to judgment.

As explained in <u>FMC v. Holliday</u>, 498 U.S. 52, 56 (1990), "there are three provisions of

ERISA [which] speak expressly to the question of pre-emption." They are known as the pre-

emption clause, the saving clause, and the deemer clause.  The pre-emption clause provides that

ERISA "shall supercede any and all State laws insofar as they may now or hereafter relate to any

employee benefit plan."  29 U.S.C. § 1144(a).  However, the saving clause provides that State

laws which regulate insurance, banking, or securities, are saved from pre-emption.  29 U.S.C. §

1144(b)(2)(A).  Finally, the deemer clause provides that "no employee benefit plan . . . shall be

deemed an insurance company . . . or to be engaged in the business of insurance or banking for

purposes of any law of any State purporting to regulate insurance companies . . . ."  29 U.S.C. §

1144(b)(2)(B).

There is no question that Pennsylvania's anti-subrogation law regulates insurance[3] and is

saved from pre-emption "[u]nless the statute is excluded from the reach of the saving clause by

virtue of the deemer clause."  <u>Holliday</u>, at 61.  Relying on <u>Holliday</u>, the Plaintiff argues that,

---

[3]Recently, in <u>Levine v. United Healthcare Corp.</u>, 402 F.3d 156 (3d Cir. 2005), the Third
Circuit held that New Jersey's anti-subrogation provisions did not regulate insurance for
purposes of the saving clause.  Unlike New Jersey's statute, Pennsylvania's anti-subrogation
provision appears in the MVFRL, not in a general section on civil actions.  Pennsylvania's law
was specifically designed to regulate the escalating costs of motor vehicle insurance, <u>see</u> <u>Danko
v. Erie Ins. Exchange</u>, 630 A.2d 1219 (Pa.Super. 1993), not to provide a general rule of civil
procedure.  Moreover, it is clear from the holding in <u>Holliday</u> that Pennsylvania's anti-
subrogation provisions regulate insurance.

because, at the relevant time, the Regence plan was a fully-insured plan, it is not an employee

benefit plan for purposes of the deemer clause.  We agree.  At the oral argument, defense counsel

admitted as much (N.T. 3/21/05, 15), and we believe the holding in <u>Holliday</u> is clear on the

subject.

> On the other hand, employee benefit plans that are insured are subject to indirect
> state insurance regulation.  An insurance company that insures a plan remains an
> insurer for purposes of state laws "purporting to regulate insurance" after
> application of the deemer clause.  The insurance company is therefore not relieved
> from state insurance regulation.  The ERISA plan is consequently bound by state
> insurance regulations insofar as they apply to the plan's insurer.

<u>Holliday</u>, at 61.

Therefore, Pennsylvania's anti-subrogation laws are not pre-empted by ERISA, and

applying Pennsylvania law would dictate a decision for the Plaintiff.

Thus, as we stated at the outset of this discussion, it would appear that a true conflict of

laws exists. However, applying the choice-of-law rules of the forum state, Pennsylvania, <u>see</u>

<u>Klaxon Co. v. Stentor Electric Manufacturing Co., Inc.</u>, 313 U.S. 487, 496 (1941), we must look

at the governmental interests of both of the competing laws to determine if a true conflict exists.

A true conflict exists "when the governmental interests of [multiple] jurisdictions would be

impaired if their law were not applied." <u>Budget Rent-a-Car System, Inc. v. Chappelle</u>, __ F.3d __,

2005 WL 1038939 *2 (3d Cir. May 5, 2005)(quoting <u>Lacey v. Cessna Aircraft Co.</u>, 932 F.2d 170,

187 n. 15).  A false conflict exists "if only one jurisdiction's governmental interests would be

impaired by the application of the other jurisdiction's law." <u>Id</u>.

Here the Plaintiffs claim that Oregon's governmental interests would not be impaired by

the application of Pennsylvania law because Oregon's statute is actually neutral, stating only that

an "insurer **may** elect to seek reimbursement."  O.R.S. § 742.536(2)(emphasis added).  We reject the Plaintiffs' reading of the statute.

Review of the Oregon cases to have discussed O.R.S. § 742.536 reveals that the statute is:

part of a statutory scheme designed by the legislature to ensure that persons injured in motor vehicle accidents receive prompt payment of benefits for economic damages that they have suffered. In order to encourage . . . providers to make timely payments, the legislature has established several mechanisms by which these providers can be reimbursed for the . . . benefits that they have paid.

Wynia v. Fick, 162 Or.App. 365, 369 (1999).  As explained by the Wynia court, an insurance carrier has four methods through which to recover benefits that it has paid.  Thus, the word "may" represents a choice, one of four, available to the insurer to seek recovery.  We find no "neutrality" in the Oregon statute.  In Oregon, subrogation in this instance is permitted; in Pennsylvania, it is not.  We conclude that there is a true conflict.

Once the court determines that a true conflict exists, Pennsylvania's choice of law rules require the court to consider both the contacts and interests of the competing forums.  See Griffith v. United Air Lines, Inc., 203 A.2d 769 (Pa. 1964).  In performing the contacts analysis, the court should look to the contacts each of the competing forums has with the matter in dispute.  These contacts should be measured on a qualitative, rather than a quantitative scale.  Id.

Here, the Plaintiffs argue that Mr. Medlar worked in Pennsylvania, resides in Pennsylvania, and the motor vehicle accident occurred in Pennsylvania.  Although these considerations are relevant to our determination, it appears that the Plaintiffs are confusing the contacts relating to the underlying motor vehicle accident with the contacts relating to the contract of insurance at issue.  See Nationwide Mutual Insurance Co. v. Walter, 434 A.2d 129, 136 (Pa. Super. 1981)(contacts relevant in tort cases include place of injury, place of conduct,

11

domicile of parties).  Here, we must look to which forum has the more substantial contacts with the policy of insurance.  Id.

TriQuint, which contracted for insurance coverage for its employees with Regence, among other insurance companies, maintains its corporate headquarters in Oregon.  It offers its employees several choices for health coverage, including Keystone (PA), a Pennsylvania based HMO.  The insurance contract was solicited in Oregon by Regence's marketing department and TriQuint's human relations department.  The plan covers employees who live and work in Oregon, as well as other places.  Thus, as Regence points out, "the place of contracting, the place of negotiation, the place of partial performance, and the partial place of the subject matter of the contract was Oregon."  (Defendant's Sur Reply, at 14).  Moreover, we find it significant that Mr. Medlar, as an employee of TriQuint, had a choice of insurance plans, including one based in Pennsylvania.  Considering all of these factors, we conclude that Oregon has more significant contacts with the insurance contract.

Finally, when we consider the competing interests at stake, we also find the scale tips in favor of the application of Oregon law.  Although Pennsylvania obviously has an interest in the protection of its citizens injured in automobile accidents, Oregon also has an interest in protecting its citizens, including businesses who are headquartered within its confines.  Here, an Oregon based company, Tri-Quint, contracted with an Oregon based insurance company to provide health insurance for its employees.  Regence has an interest in the terms of that contract being enforced, including the choice of laws provision. It also has an interest in uniform application of its insurance contracts.  Finally, a citizen of Pennsylvania chose to be covered by an Oregon based policy, despite the fact that a Pennsylvania policy was also offered.  The

interests of Oregon should not be subverted by Mr. Medar's choice.

      D.  Conclusion

Despite the fact that we conclude that the Medlars complied with the administrative exhaustion provisions of the insurance policy and the fact that the provisions of the plan and the language of the Trust Agreement amount to a subrogation clause, we conclude that Pennsylvania's choice-of-law rules require application of Oregon law.  As such, Regence is entitled to judgment in its favor.  An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BRUCE MEDLAR, JR. and KATHY : CIVIL ACTION
MEDLAR, H/W :
 :
 v. :
 :
THE REGENCE GROUP a/k/a REGENCE :
BLUE CROSS BLUE SHIELD OF OREGON : NO. 04-2762

## O R D E R

AND NOW, this 23rd day of May , 2005, upon consideration of

the Defendant's Motion for Judgment on the Pleadings, the Plaintiffs' response, construed as a

competing motion, the subsequent pleadings filed in support of each of the motions, the

arguments presented to the court at the hearing, and for the reasons stated in the accompanying

Memorandum, IT IS HEREBY ORDERED that the Defendant's Motion for Judgment on the

Pleadings is GRANTED.  Judgment is entered in favor of the Defendant, Regence, and against

the Plaintiffs, Bruce and Kathy Medlar.


BY THE COURT:


_____
JACOB P. HART
UNITED STATES MAGISTRATE JUDGE